UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JOHN MICHELE FANUZZI** and
**NORAH BAWN FANUZZI**,

Debtors.

Case No. **12-60143-11**

# MEMORANDUM OF DECISION

At Butte in said District this 20th day of April, 2012.

In this Chapter 11 bankruptcy a hearing was held at Butte on April 10, 2012, on several motions and objections filed by the Debtors John Michele Fanuzzi ("John") and Norah Bawn Fanuzzi ("Norah") (together "Fanuzzis" or "Debtors"), relating to this Court's Orders granting the motion to modify stay filed by the Bank of the Rockies N.A. ("Bank") and the Bank's motions for Rule 2004 examinations of the Debtors, and on the Bank's motion to enter and inspect real property located in Emigrant, Montana (the "subject property"). The Debtors, pro se, filed their motions and objections on March 20, 2012, and amended them on March 30, 2012, but did not appear at the hearing on April 10, 2012. Instead, on April 10, 2012, they filed an emergency motion to continue the hearing. The Court denied the motion and the hearing proceeded. The Bank was represented by attorneys Joel E. Guthals ("Guthals") and Jeffrey Hunnes of Billings. Guthals and the Bank's president Michael E. Grove ("Grove") testified. Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 were admitted. At the conclusion of the hearing the Court made preliminary rulings from the bench denying Debtors' motions to vacate Orders, overruling their objections and granting the Bank's

motion for Rule 2004 examinations, and granting the Bank's motion to enter and inspect the subject property. The Court directed the Bank's counsel to submit proposed orders. The proposed orders have been submitted and the matters are ready for final decision in accordance with the Court's oral rulings made at the hearing.

This Court has exclusive jurisdiction in this Chapter 11 case under 28 U.S.C. § 1334(a). Debtors' motions to vacate orders and objections to inspection and Rule 2004 exams are core proceedings under 28 U.S.C. § 157(b)(2). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

The Bank loaned money to John Fanuzzi and his corporation, with the loans secured by the subject property. Grove testified that the Bank made two commercial loans in putting together a construction loan, and a third loan which was an operating loan. Ex. 12 and 14 are the promissory notes. Ex. 12 is a note dated February 20, 1998, in the principal amount of $665,000.00, signed by John as president of Golden Ratio Woodworks, Inc. ("Golden"), and signed by John personally as co-borrower. Ex. 14 is a note dated June 1, 2001, in the amount of $570,000.00 signed by John as president of Golden and as co-borrower.

Ex 13 and 15 are deeds of trust granting the subject property to secure the 2 loans. Ex. 13 was recorded in Park County on February 20, 1998. Ex. 15 was recorded on June 1, 2001. The subject property is described as:

> That part of the W1/2 of Section 4 and the SE 1/4 of Section 5, Township 6
> South, Range 8 East, of the Principal Montana Meridian, in Park County,
> Montana, described as Lot 3 of Minor Subdivision Plat No. 149 on file in
> the office of the Clerk and Recorder of said County, under Document
> #239761.

> TOGETHER WITH all of the rights and privileges of Grantor in said Real
> Property, all existing erected or affixed buildings, improvements and
> fixtures, all easements, rights of way, all water rights and ditch rights
> (including stock and utilities with ditch or irrigation rights), all other rights,
> royalties and profits related to the Real Property, including without
> limitation all minerals, oil, gas, geothermal and similar matters, and all of
> the tenements, hereditaments, appurtenances and improvements, thereupon
> belonging or otherwise appertaining, or thereto incident, the rents, issues,
> and profits thereof.

Grove testified that the subject property, which was the Bank's security, included land and a commercial building which were owned by the corporation Golden and not by John personally, and that both deeds of trust waived any homestead exemption. John admitted that the loans were secured by the deeds of trust on the building. Ex. 20, Tr., pp. 93-94.

Grove and Guthals both testified that the loans were not paid on time, that the Bank granted Golden and John seven extension over 3 or 4 years and advanced additional funds to pay for insurance, until eventually the 2 loans went into default and the Bank instituted foreclosure proceedings. Grove and Guthals testified that the Bank undertook nonjudicial foreclosure pursuant to the deeds of trust. Guthals was named the trustee, and a trustee's sale of the subject property was scheduled for November 10, 2010. Guthals testified that he determined that the Bank was the holder of both promissory notes. He confirmed that the borrowers were in default under both notes, and hired a title company to get a title insurance guarantee.

Ex. 9 and 10 are notices of the trustee sale, including Guthals' statement that Golden and Fanuzzis were served with the notices by mail. Guthals testified that notice was properly sent to Fanuzzis, Golden, and other entities entitled to notice, that notice was posted on the building and affidavits were properly recorded.

Grove and Guthals testified that, at John's request, the Bank postponed the trustee's sale

3

until November 19, 2010. Grove testified that John told him that he had a buyer, but that no buyer came forward after the postponement. Grove testified that the trustee's sale took place on November 19, 2010, at the Park County Courthouse, and that the Bank submitted the highest bid of $1,265,693.61. Guthals testified that he delivered the purchase price to the Bank, where it was applied to pay the loan indebtedness, fees and costs. Ex. 4 is a trustee's deed delivered by Guthals conveying the subject property to the Bank. Ex. 4 was recorded on December 2, 2010.

Grove and Guthals testified that Fanuzzis moved into the subject property, where they still are living, without the Bank's consent. Grove and Guthals testified that the Bank delivered to Fanuzzis by process server several letters and notices to quit the subject property, beginning February 17, 2011, demanding that Fanuzzis vacate the property immediately and citing the Bank's right to possession under Mont. Code Ann. § 71-2-319. Ex. 5. Grove testified that the Debtors still live in the building on the subject property with other persons, and that they have inventory at the subject property. Other persons are living on the subject property without the Bank's consent, and Grove testified that the Fanuzzis refuse to permit the Bank to inspect the subject property. Guthals testified that the Bank's last inspection of the subject property was in the Spring of 2011.

Ex. 17 is a printout of results for search of the owner of the subject property from the Park County Treasurer, dated 4/6/2012, and it shows the Bank as the owner of the subject property at 2892 US Highway 89 South in Emigrant, which is the same address listed on Debtors' Schedule A. Ex. 16 is a search for Park County property owned by John, and it lists 3 parcels of real property, none of which is the subject property.

Guthals testified that the Bank filed an unlawful detainer action against Fanuzzis in state

4

court, but that the state court action has been delayed by the Debtors. Guthals testified that Fanuzzis filed a lawsuit against the Bank in the United States District Court for the District of Montana arguing federal preemption, and asking for a judgment against the Bank in the amount of $30 million. Guthals testified that the Bank filed an answer and counterclaim for unlawful detainer in the federal district court action. The federal district court allowed the Fanuzzis to file an amended complaint, and Guthals testified that Fanuzzis then filed their first bankruptcy petition.

The Fanuzzis filed their first Chapter 11 petition commencing Case No. 11-61848-11 on September 22, 2011. The petition is signed by both John and Norah Fanuzzi, dated September 22, 2011. The Bank filed a motion to modify stay in Case No. 11-61848. Guthals testified that the motion was filed in order to proceed with the Bank's unlawful detainer action. The Bank's motion to modify stay in 11-61848-11 was granted when the Fanuzzis did not file a response. The U.S. Trustee ("UST") filed a motion to dismiss the case because the Fanuzzis had not satisfied the requirement of 11 U.S.C. § 109(h)(1) for prepetition credit counseling. After a contested hearing the Court entered a decision granting the UST's motion and dismissed the case because Fanuzzis did not comply with the credit counseling requirement.

Guthals testified that the federal district court dismissed Fanuzzi's complaint in the federal court action for failure to state a claim, and also dismissed the Bank's unlawful detainer counterclaim. Guthals testified that he refiled the unlawful detainer action.

The Bank filed a complaint in the Montana Sixth Judicial District Court, Park County, Case No. DV-2011-216 on December 5, 2011, Ex. 2. Ex. 2 asks for an expedited trial, restitution, possession of the subject property, and judgment for lost rents and profits, costs, and

punitive damages against the Fanuzzis and other defendants. Guthals testified that the state court set the trial for January 17, 2012, but the Fanuzzis disqualified the presiding judge, Hon. Wm. Nels Swandal. Ex. 3.

Guthals testified that another judge assumed the bench in the state court case, and that the Fanuzzis then filed a notice of removal of the state court action, Ex. 11, to the federal district court, where it was assigned to the same judge, Hon. Carolyn S. Ostby. The Bank moved to remand the case back to state court, at which time, Guthals testified, Fanuzzis filed their second Chapter 11 petition.

Fanuzzis filed the instant Chapter 11 petition on February 3, 2012. Debtors each signed the petition, with a date stated as 9/22/11[1]. The box where a non-attorney bankruptcy petition preparer is required to sign under penalty of perjury is not signed. At the § 341 meeting John testified that the Debtors' Schedules were prepared by a non-attorney, Charles Lincoln's assistant identified as "Peyton." Ex. 20, Tr., pp. 54, 116, 117.

The Schedules and Statement of Financial Affairs (Docket No. 7) were filed on February 17, 2012. Schedule A lists the real property located at "2892 US Highway South, Emigrant, MT", as owned by John ("Husband") in fee simple with a value of $3,500,000, and $0 amount of secured claim against the residence. A quarry located at 2849 US Highway 89 South in Emigrant is listed on Schedule A as community property with a current value of $300,000, securing a claim in the amount of $150,000. Schedule C does not list any exemptions.

Schedule D lists secured claims, including a disputed claim owed by John ("H") to Bank

---

[1] The signatures on the petition filed in the instant case are slightly different than the signatures on the petition in Case No. 11-61848-11, but the date on both is 9/22/11.

of the Rockies in the amount of $450,000, secured by the factory/residence listed on Schedule A. Schedules I and J list the Debtors' income and expenses, although the box marked "Spouse" is filled in with "N/A" and there is no income listed for Norah. Schedule J lists "$0" monthly rent or home mortgage payment, and $560 in average monthly expenses.

The SOFA, at item 4a (Suits and administrative proceedings, executions, garnishments and attachments") lists no suits or proceedings, but Debtors also did not check the box below "None." Item 9 of the SOFA ("Payments related to debt counseling or bankruptcy") has the box "None" checked. That answer "None" is incorrect, as John admitted at the § 341 meeting. Ex. 20, Tr., p. 120. Item 9 requires disclosure of all payments "made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case." At the § 341 meeting John testified that Lincoln's assistant Peyton prepared the petition, Schedules and SOFA, and that Lincoln was paid $7,500 by John's partner Dennis Menders. Ex. 20, Tr., pp. 117, 120.

Both the Schedules and SOFA have Debtors' signatures under declarations made under penalty of perjury[2] that the Schedules and SOFA are true and correct to the best of their knowledge, information and belief. Norah testified at the § 341 that she did not sign the declarations, that John signed for her, and she does not remember whether she read them before she left their home. Ex. 20, Tr., p. 16.

Under questioning by the UST at the § 341 meeting, John testified that their petition and

---

[2] At the § 341 meeting of creditors John testified: "Well, honestly, I don't remember reading the fine print. I probably didn't read the fine print; I just signed it. And I saw, I saw 'perjury' somewhere on the first page, but right by the signature, I didn't see it." 341 Tr., p. 12.

7

schedules were prepared and written by another person, who John finally identified as Lincoln's assistant "Peyton." Ex. 20, Tr., at pp. 116-20.

The Bank filed on February 29, 2012, its motion to modify stay and proceed with its unlawful detainer action, with notice to the Debtors giving them 14 days to respond and request a hearing, and advising that if they fail to file a response "then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing." The certificate of service shows that it was mailed to the Debtors at PO Box 999, Emigrant, MT 59027, which is their address of record. Debtors did not respond within the 14-day notice period, and the Court granted the Bank's motion to modify stay on March 20, 2012.

The § 341 meeting of creditors was scheduled to be held on March 6, 2012, in Butte. The Debtors appeared at the meeting, and Guthals began questioning them about their declaration that they signed their Schedules and SOFA under penalty of perjury. Grove testified that he attended the § 341 meeting, and that Guthals was professional, polite and respectful to the Debtors, that Guthals sat across the table from them and did not raise his voice or physically approach the Debtors during his questioning. Grove testified that Guthals was just beginning his examination when John became physically agitated and fainted. Court security came. An ambulance was called and John was taken out of the building. The § 341 meeting was continued to March 27, 2012.

On March 7, 2012, Bank of the Rockies filed its motion to enter an inspect the subject property. On March 15, 2012, the Bank filed its motions to conduct Rule 2004 examinations of the Debtors immediately after the § 341 meeting of creditors. Pursuant to Montana Local

Bankruptcy Rule 9013-2(g)(2)(C), the motions for Rule 2004 examinations were granted without notice.

The Court entered an Order (Dkt. 19) granting the Bank's motion to modify stay on March 20, 2012. After that Order was entered, on March 20, 2012, Debtors filed a combined response and motions to vacate the Orders granting the Bank's motions to modify stay and for Rule 2004 examinations, and opposing the motion for inspection. Debtors' response is 24 pages long and is signed by both John and Norah "pro se." However, at the § 341 meeting John admitted that he did not prepare the response, but rather he spoke with Lincoln on the phone and told him what was going on, and that the legal theories and case citations in their response were prepared and written by Lincoln, who is not a licensed attorney. Ex. 20, Tr., at pp. 54, 119.

The Debtors' response contends that both Debtors' medical conditions require protection by this Court; that Guthals engaged in abusive tactics and intimidation while questioning Debtors at the 341 meeting; that they need time to prepare for the Rule 2004 examinations; that the Bank is a servicer not a holder of the mortgage notes and mortgage; they demand a jury trial on all issues involving their mortgage and ask for additional time to prepare for their 2004 examinations; and they oppose the Bank's motion to enter and inspect its property. The Debtors' responses and motions to vacate Orders were scheduled for hearing at Butte on April 10, 2012.

The Bank filed a notice of continuance of the Rule 2004 examinations of the Debtors on March 26, 2012, stating that the date of the 2004 exams will be determined by the Court. Guthals testified that the Bank will give the Debtors at least 10 days' notice of their Rule 2004 examinations, which it wishes to conduct within 30 days of the hearing, and he testified that the Bank's document request for the 2004 exams is not oppressive, and offered to submit a proposed

9

Order to the Court. The Court directed Guthals to submit the proposed Orders.

On March 27, 2012, the continued § 341 meeting was held at Butte. Both Debtors appeared pro se, and were examined by Guthals. Grove testified that he attended the continued § 341 meeting, and that he did not see any abusive conduct by Guthals toward the Debtors, nor did Guthals raise his voice. Guthals asked the Debtors about their statements in a letter sent to the state court wherein they referenced consultation with counsel. John answered that he has a "paralegal helper." Ex. 20, Tr., p. 53. Debtors hesitated naming their paralegal helper, but John testified that "He's not a lawyer" and "He's not a licensed attorney." Ex. 20, Tr., p. 54. Guthals asked Debtors if the helper assisted in their combined objections and motions, as amended, and they answered in the affirmative and that the helper was paid $7,500 by a friend identified as Dennis Menders. Ex. 20, Tr., pp. 54-55.

Guthals asked the Debtors about the helper's qualifications to assist them, and John answered "Legal experience." Ex. 20, Tr., p. 55. John answered affirmatively on page 56 when asked if the helper wrote the pleadings, and he answered "No" when asked if he read the legal research which Lincoln had included in the pleadings. Tr., pp. 56, 110.

With respect to the allegations of abusive treatment of Debtors by Guthals included in Debtors' motions to vacate and objections, Grove testified that John denied the allegations of Guthals' abusive conduct at the continued § 341 meeting. The transcript of the § 341 meeting shows that John withdrew the statement that Guthals abused, badgered, berated, bullied, and intimated John at the § 341 meeting. Ex. 20, Tr., pp. 110-11, 112, 114-15[3]. Guthals denied

---

[3]John reiterated that he felt intimidated when Guthals asked him about signing the documents under penalty of perjury. But John testified that "berate" was "maybe the wrong word." Ex. 20, Tr., p. 112. On page 114 John stated: "I'll withdraw the statement." Ex. 20.

10

being abusive toward the Debtors at the § 341 meeting. There is no evidence admitted in the record that Guthals was abusive or intimidating toward the Debtors at the § 341 meeting.

On March 30, 2012, Debtors filed amended objections and responses and motions to vacate orders (Dkt. 28). The amended response is 34 pages[4]. It adds argument about the automatic stay; repeats the request to vacate the Orders granting Rule 2004 examinations; asks for more time to conduct discovery and, after John withdrew the statement at the § 341 meeting, repeats the accusations that Guthals used his position as attorney "to abuse, badger, berate, bully, and intimidate John" into a "stress attack." Both John and Norah Fanuzzi signed the amended response again "pro se."

The Bank filed lists of witnesses and exhibits on April 5, 2012, and April 9, 2012. Debtors did not file witness and exhibit lists.

On April 10, 2012, the day of the hearing, Debtors had hand delivered to the Clerk for filing their "Emergency, Ex-Parte, Verified Motion for Continuance/Rescheduling of Hearing for Failure to Comply with Local Rules Regarding Pre-trial Conference, and Reasons of Debtors' Health & Medical Emergency Rule 2090-6, 9003-1 and 9013-1(g)(2)(M)." Debtors' motion to continue contends that John is displaying symptoms of stress, and Norah is suffering "crying jags and otherwise inexplicable symptoms of emotional fatigue and exhaustion." They claim to be suffering from "Post-Traumatic Syndrome" defined as "Legal" or "Litigation Abuse Syndrome" of which Guthals is a "direct, material, efficient, and therefore legal cause of Debtors' symptoms." Debtors requested a continuance of the April 10, 2012, hearing, discovery, a pre-trial order and 14 days' disclosure of witnesses. Alternatively, Debtors request that their

---

[4]They included a motion to exceed the 15 page limit.

unlicensed counsel be freed from the threat of prosecution for unauthorized practice of law, or that this Court appoint them an attorney, and if not then they ask this Court for recusal. Like their other responses, Debtors signed their motion to continue "pro se," but like their other responses it appears to be prepared by the same non-licensed person who prepared their other responses and motions.

There are no exhibits attached to Debtors' motion to continue, and therefore no statements from medical professionals corroborating their contentions that they suffer from stress or medical problems which prevented them from appearing at the hearing on April 10, 2012. Grove testified that he received several phone calls and emails from the Debtors prior to the hearing. He testified that John sounded fine on the phone, and that John did not indicate to him that he was suffering from any serious medical problems or stress. Grove testified that John told him that the Debtors wanted to negotiate a settlement with the Bank, and that if they could not reach an agreement they would file "more papers."

Grove testified that the Bank, as owner of the subject property, cannot sell the property because the Debtors refuse to vacate, and the Bank has had to purchase forced place insurance, pay taxes, utilities and legal fees incurred trying to obtain possession of the subject property. John testified at the § 341 meeting that he is paying nothing for utilities or taxes. Ex. 20, Tr., pp. 96-97. In addition, Grove testified that the defaulted loans are guaranteed by the United States Department of Agriculture, which creates a legal obligation of the Bank to bank examiners for the loan.

## DISCUSSION

**I. Debtors' Motion to Continue.**

The Court denied Debtors' emergency ex parte motion to continue the hearing based on Grove's testimony about John's statements during phone calls prior to the hearing, and the allegations in the motion to continue about Guthals' abuse which John had earlier withdrawn the § 341 meeting, Ex. 20 at p. 114.  The Debtors' declarations under penalty of perjury that their Schedules and SOFA are true and correct are required parts of Official Forms 6 and 7.  All debtors must sign their schedules and SOFA under penalty of perjury.  Neither those declarations nor Guthals' questions about them were abusive or improper, and form no grounds to grant a continuance.

The Debtors filed their emergency motion to continue the hearing on the date of the hearing, based in part on Montana Local Bankruptcy Rule ("LBR") BR 9013-1(g)(2)(M), which provides that continuance/rescheduling of a hearing is one of the matters which the Court will routinely grant or deny, without notice or hearing, in the Court's discretion.  Another Local Rule, however, sets forth requirements which must be met for requests for continuance.

Mont. LBR 5071-1 requires that a party requesting the continuance of a hearing "shall:  (a) file a motion seeking the continuance at least three (3) days prior to the scheduled trial, hearing or conference; (b) advise the Court of the affected party's response to such request or what attempts have been made to gain each party's consent; ..."  Debtors did not comply with LBR 5071-1.  They did not file their motion for continuance at least 3 days prior to the April 10, 2012, hearing, and they did not advise the Court of the Bank's response to the request.  Debtors had more than two weeks' notice of the hearing, but did not file their motion to continue until the day of the hearing.

In the Ninth Circuit courts have a duty to construe pro se pleadings liberally, including

pro se motions as well as complaints. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003). However, also in the Ninth Circuit pro se litigants are not excused from compliance with the rules. *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP 2002). Ignorance of court rules does not constitute excusable neglect, even if a litigant appears *pro se*. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (*quoting Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

The Debtors were required to comply with LBR 5071-1 in seeking a continuance, and they did not. The testimony of Grove at the hearing and John's § 341 testimony showed, and this Court finds, that Guthals did not abuse the Debtors at the § 341 meeting, and did not cause the Debtors unreasonable stress, PTSD or medical problems. Debtors did not include any statement from a medical doctor supporting their argument that they suffer from medical problems which prevented their appearance at the April 10, 2012, hearing, and Grove's testimony that Debtors' motion to continue was filed because the Bank would not negotiate a settlement is uncontroverted. The Court finds and concludes that the Debtors failed to show good cause to continue the April 10, 2012, hearing.

**II. Motion to Vacate Order Modifying Stay.**

Debtors move to vacate the Order granting the Bank's motion to modify the stay, arguing that it should not have been granted and should be relitigated, in a trial by jury, with more time for discovery, and the Court should appoint them counsel. The § 341 transcript establishes that the Debtors' responses were prepared by a person who is not licensed to practice law in this District, Lincoln, and further that Debtors signed the response without reading them or the

research or citations therein.

Rule 9011(b), F.R.B.P., provides that by filing a motion or other paper, an unrepresented party is certifying that to the best of the person's knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances," that the factual contentions and legal contentions are warranted on the evidence, existing law or by a nonfrivolous argument for the modification or establishment of law. John and Norah did not read the responses prepared by Lincoln which they signed, or check his research. This suggests that they signed their responses in violation of Rule 9011(b).

Notwithstanding those possible violations, Debtors' objections and motion to vacate the Order modifying the stay set forth an incorrect statement of the analysis for the relief they seek. The Bank's motion to modify stay was granted after the Debtors failed to respond within the notice period included in the motion. By operation of LBR 9013-1(f), "[i]f no response and request for hearing is filed within fourteen (14) days of the date of the motion, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted." Additional requirements for opposition to a motion to modify stay is found at LBR 4001-1(b)(2): "The debtor's failure to meet these requirements may constitute cause for the Court to deny the debtor's request for additional time and/or for the Court to consider the motion unopposed."

When Debtors failed to file their response to the Bank's motion to modify stay within the notice period, the Court entered an Order granting the motion and modified the stay. Thus, at this point the Debtors' burden is not on the merits of a 11 U.S.C. § 362(d) motion, but rather the Debtors have the burden of proof on a motion for reconsideration.

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Parma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (Amendment under Fed. R. Civ. P. 59(e)); *see also, In re Teigen*, 11 Mont. B.R. 91-92 (Bankr. D. Mont. 1992); *In re Brazier Forest Products*, 122 B.R. 119, 121-122 (D.W.D. Wash. 1989); *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407 (8th Cir. 1988). The Debtors' motion for reconsideration of the Court's Order granting the Bank's motion to modify stay does not present newly discovered evidence which was not available to the Debtors earlier in this case. Debtors failed to appear at the hearing they requested, and so presented no evidence at all. Their contentions in their responses are argument, not evidence. The Court finds and concludes that Debtors failed to satisfy their burden for reconsideration.

The evidence admitted at trial shows that the Bank is now the owner of record of the subject property by recorded trustee's deed. The Debtors are living in the Bank's property without its consent, and causing the Bank monetary losses from its inability to sell the property, and the need for the Bank to pay for insurance, utilities and property taxes. The evidence does not show any clear error by the Court in granting the Bank's motion to modify stay.

Debtors argue in their responses that the matter must be relitigated in federal court, in a jury trial, and they should be appointed counsel. Debtors have the right to hire licensed counsel of their choice to represent them, and they have the right to proceed pro se. This Court is aware of no right to appointment of counsel to represent the Debtors in this bankruptcy case. *See*,

*Mundt v. Home Fed. Sav. & Loan Ass'n.*, 349 F.2d 938, 939-40 (9th Cir. 1965).

Furthermore, even if the matter before the Court was the Bank's motion to modify stay rather than Debtors' motion for reconsideration, Debtors' responses misapprehend the nature of relief from stay proceedings. Relief from stay proceedings are handled in a summary fashion, and the validity of a claim or contract is not litigated during the hearing. *In re Veal*, 450 B.R. 897, 914 (9th Cir. BAP 2011); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740-41 (9th Cir. 1985). A party seeking relief from the stay need only establish that it has a colorable claim to enforce a right against property of the estate. *Veal*, 450 B.R. at 914-15; *United States v. Gould (In re Gould)*, 401 B.R. 415, 425 n. 14 (9th Cir. BAP 2009); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994). The Bank's uncontroverted evidence admitted at trial overwhelmingly establishes that it has a colorable claim to the subject property.

Debtors complain about the expedited nature of the Bank's motion for relief, but that nature is embodied in the Code and Rules. Section 362(e) provides for a 30 day time limit for the stay when a motion for relief is filed. *See Veal*, 450 B.R. at 914. The minimum notice period required under F.R.B.P. 2002 for several listed matters does not apply to relief from stay motions. This Court commonly schedules hearings on motions for relief from stay on extremely short notice. Thus, Debtors' request for delay and for additional time to prepare are unsupported by the Code, Rules or case law in this circuit. The Court finds and concludes that the Debtors have failed to satisfy their burden for reconsideration of this Court's Order granting the Bank's motion to modify stay.

**III. Motions for Rule 2004 Examinations.**

Debtors' objections and motions to vacate the 2004 exams repeat the allegations of abuse

17

by Guthals which are unsupported by the record and have been rejected above. The Bank has stated on the record that it will allow the Debtors reasonable time and notice of their Rule 2004 examinations, and that the document request will not be oppressive.

Rule 2004 allows any party to file a motion for the Court to order the examination of any entity relating to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. Rule 2004(a) & (b). The Debtors have filed petitions seeking the benefits of bankruptcy, and they must therefore shoulder the attendant burdens. The record set forth above provides sufficient cause for this Court to order the examination of the Debtors by the Bank under Rule 2004. The Order shall set forth reasonable conditions of time, place, attendance and for production of documents.

**IV. Motion to Enter and Inspect Real Property.**

Having decided above to deny Debtors' motion to vacate the Order granting the Bank's motion to modify stay, the Court grants the Bank's motion to enter and inspect the subject property. The opposition written by Debtors' legal helper repeats their allegations of Guthals' harassment and intimidation which John withdrew at the § 341 meeting, and repeats their contention that the Bank's claims should be relitigated under preemption principles.

There is no reason not to grant the Bank's motion to enter and inspect the subject property. The evidence admitted at the hearing shows that the Bank owns the subject property. It is not property of the estate according to the evidence in the record. The Bank has the right as record owner to utilize local authority to enter and inspect its property.

**IT IS ORDERED** separate Orders shall be entered in conformity with the above: (1)

denying Debtors' emergency motion for continuance (Dkt. 38); (2) denying Debtors' motions to vacate and reconsider Orders modifying the stay and granting Rule 2004 examinations, and overruling Debtors' objections to Rule 2004 examinations (Dkt. 20, 21 & 28); (3) rescheduling the Bank's Rule 2004 examinations of the Debtors; and (4) granting the Bank's motion to enter and inspect real property (Dkt. 11).

BY THE COURT

/s/ Ralph B Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana